**CLEAN-UP '84, A Registered Political Action Committee, Plaintiff,**

**v.**

**Walter C. HEINRICH, Hillsborough County Sheriff, Individually and on behalf of all other Sheriffs in the State of Florida; Robin Krivanek, Supervisor of Elections, Hillsborough County, Florida, Individually and on behalf of all other Supervisors of Election in the State of Florida; George Firestone, Secretary of the State of Florida, Defendants.**

No. 84–245–Civ–T–15.

United States District Court,
M.D. Florida,
Tampa Division.

July 19, 1984.

Stephen F. Hanlon, Levine, Freedman, Hirsch & Levinson, Tampa, Fla., for plaintiff; George Sheldon, Tampa, Fla., of counsel.

James W. Sloan, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for the State.

Sara Fotopulos, Asst. County Atty., Tampa, Fla., for defendant Krivanek.

## OPINION AND ORDER

CASTAGNA, District Judge.

This matter came before the Court at a non-jury trial on June 28, 1984. Plaintiff Clean-Up '84 is a registered political action committee that seeks to employ the initiative procedure provided by the Florida Constitution, Article XI, Section 3, to place a proposed constitutional amendment on the ballot. Defendant Walter C. Heinrich, Sheriff of Hillsborough County, is a nominal party representing all of the sheriffs in the State of Florida. Defendant Robin Krivanek is also a nominal party, representing all of the Supervisors of Election in the State of Florida.

Clean-Up '84 has challenged two statutes. Section 104.36, Florida Statutes, prohibits solicitation of signatures on petitions within 100 yards of polling places on election day. Section 99.097(4), Florida Statutes, provides that the supervisor of elections must be paid a charge of 10¢ per signature to verify signatures on petitions and, further that no provision can be made for waiver of those charges when petitioners desire to have an issue placed on the ballot. The Court will examine in turn the separate and distinct issues raised by the challenges to these statutes.

### Section 104.36, Florida Statutes

On March 5, 1984 this Court entered a preliminary injunction prohibiting the enforcement or threatened enforcement of § 104.36 during the March 13, 1984 presidential preference primary. 582 F.Supp. 125. Clean-Up '84 now seeks to have this injunction made permanent. The challenged statute provides, in pertinent part:

Any person who, within 100 yards of any polling place on the day of any election ... solicits or attempts to solicit a signature on any petition ... is guilty of a misdemeanor of the first degree, punishable as provided in § 775.082, § 775.083, or § 775.084. When determining the area in which solicitation is prohibited, the distance from the polling place shall be measured from the entrance to the room or other area in which the voting equipment or pollworkers are housed.

Although Plaintiff's witness George Sheldon, who was a member of the Florida House of Representatives from 1974 to 1982, attempted to show that this law and Fla.Stat. § 99.097(4) were enacted by a disgruntled legislature in reaction to Governor Askew's successful drive to place a financial disclosure law on the ballot through the initiative process, that testimony, although of historical interest, is of little

legal significance. Rather, of greater import is the effect of the law once enacted. Mr. Sheldon, who is the chairman and treasurer of the Clean-Up '84 political action committee, testified that he was familiar with at least two sites in Tampa, the Jewish Towers and the Sheet Metal Workers Union hall, which were centers for political discussion and also were within 100 yards of polling places. Thus, under this statute a person soliciting signatures on a petition on election day at one of these sites could be charged with a misdemeanor.

The State presented little in the way of hard evidence that could justify this restriction. One witness who voted at the March 13, 1984 presidential primary testified that an otherwise inoffensive young man who solicited his signature on a Clean-Up '84 petition as he entered and exited the polls told him, "you must be opposed to clean air," when he refused to sign. In addition, the Polk County supervisor of elections testified that two precinct clerks out of seven who reported back to her after the March 13 primary expressed some dissatisfaction with the conduct of the election while the preliminary injunction was in effect. However, Polk County was comprised of a total of 124 precincts during that election. Finally, Defendant Krivanek testified that in 1976, before this law was enacted, no problems were presented by the petition drive at the polls; and on March 13, 1984 no substantial problems arose. Defendant Krivanek also testified that the poll deputies charged with maintaining order on election day received only 20 minutes of instruction, thus suggesting that they would be unprepared to handle the kind of disruption the State attempted to cause the Court to envision. Those deputies are, however, instructed to call either the supervisor of elections or the sheriff if incidents occur.

From such insignificant episodes the State attempts to make a case out of "what might be." Clearly, however, speculative testimony of the State's witnesses and argument of its counsel have no relevance in a situation such as this where First Amendment rights are at stake.

■ Based on the evidence and testimony presented at trial and the stipulations and arguments of counsel, the Court concludes the following:

Section 104.36, Florida Statutes, is unconstitutional because it violates the people's right to freedom of speech and association protected by the First Amendment. Asking a voter to sign a petition is speech protected by the United States Constitution; and gathering at the polls to solicit signatures is the kind of association that the First Amendment protects. The right to free debate on political issues is one of the highest values safeguarded by our Constitution, a right that can not be infringed without a showing of compelling justification. Although the State can enact reasonable regulations to ensure orderly elections, those regulations may not "place substantial and direct restrictions on the ability of candidates, citizens, and associations to engage in protected political expression, restrictions that the First Amendment cannot tolerate." *Buckley v. Valeo*, 424 U.S. 1, 59, 96 S.Ct. 612, 654, 46 L.Ed.2d 659 (1976).

The State has made no showing that Fla.Stat. § 104.36 is a necessary or even a reasonable means to insure order at the polls. The court cannot uphold a law that substantially infringes First Amendment protections based only upon a vague specter of future disorder.

Section 104.36, Florida Statutes, is unconstitutional also because it is overbroad and does not represent the least restrictive means to achieve the purpose of insuring an orderly election process. *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). The 100-yard radius, as testified to by Mr. Sheldon, in fact encompasses some sites, including private homes and businesses, where the gathering of signatures could impose no threat to the voting process. Furthermore, although the State urges that the statute is narrowly drawn in that it applies only to election day, that argument overlooks the fact that other, less restrictive means to insure order

and decorum are available for use on election day as well as any other day of the year. Florida does have laws that prohibit disorderly conduct and interference with the election process, *see e.g.*, Fla.Stat. §§ 877.03, 104.11, 104.051, 104.061, 104.091, 104.185, 104.23, and 104.41.

For instance, Plaintiffs did not challenge in any respect a similar statute also designed to keep order at the polls, Fla.Stat. § 101.121, which, with the exception of certain authorized personnel, prohibits any person not in line to vote to come within 15 feet of any polling place. Furthermore, if twenty minutes of instruction for poll deputies is insufficient to insure that elections proceed smoothly, that problem must be remedied in some way other than a blanket prohibition of signature solicition at the polls on election days. Therefore, because Fla.Stat. § 104.36 infringes upon protected speech, and does not achieve its purpose by the least restrictive means, it is invalid. *Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980).

### *Section 99.097(4)*

Section 99.097(4), Florida Statutes, provides that the supervisor of elections shall be paid a charge of ten cents per signature or the actual cost, whichever is less, for verifying the signatures on petitions. A major-party candidate for office who cannot afford this charge "without imposing an undue burden on his resources or upon the resources otherwise available to him" can make an oath to that effect and have the signatures verified at no charge. This waiver is not available, however, for minor party candidates or for groups desiring to place an issue on the ballot.

■ Plaintiffs attempted to demonstrate that this statute, like section 104.36, was prompted in retaliation for Governor Askew's successful use of the initiative process in 1976. Again, however, legislative motivation, to the extent it can be identified, is not controlling. Instead, the Court must look to the effect of the statute and decide whether it imposes an impermissible burden on petitioners in violation of the equal protection clause of the Fourteenth Amendment.

Little in the way of relevant factual testimony on this issue was presented at trial. George Sheldon testified that Clean-Up '84 had gathered approximately 210,000 signatures by the date of trial. His organization would like immediate verification of the signatures, he stated, so that his group would know how many signatures were valid and in what districts to concentrate their collection efforts.

Of critical importance to the Court's analysis of this issue is the fact presented to the Court by the pre-trial stipulation of the parties: that Clean-Up '84 cannot pay the charges imposed in Fla.Stat. § 99.097(4) without imposing an undue burden on its resources or any resources available to it. The crucial effect of this stipulation is the State's recognition that, unless section 99.-097(4) is declared invalid, there will be no way for Clean-Up '84, no matter how many signatures it collects, to have the issue it proposes placed before the people.

The initiative process employed by Clean-Up '84 and other groups is set out in Article XI, section 3 of the Florida Constitution:

The power to propose amendments to any portion or portions of this constitution by initiative is reserved to the people, provided that any such revision shall embrace but one subject and matter directly connected therewith. It may be invoked by filing with the secretary of state a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole in the last preceding election in which presidential electors were chosen.

Because the initiative procedure is reserved to the people by the Florida Constitution, it cannot be modified by the legislature. Because there can be no deviation from the eight per cent signature requirement, every signature on an initiative petition must be verified. This is crucial because it means that no alternative avenue is avail-

able for a group that cannot afford to have all the signatures verified. As mentioned above, a candidate can waive this charge by filing an oath testifying that the charge would impose an undue burden upon the financial resources available to him. Although minor party candidates can not take advantage of the waiver, Fla.Stat. §§ 99.-097(1)(b) and (2) provide that in certain circumstances the signatures may be verified by random sampling, a method that effectively reduces the cost.

The random sampling method of verification is not available, however, to those seeking to have an issue placed on the ballot because the initiative procedure is of constitutional rather than legislative origin:

> Article XI, section 3, having mandated that there shall be no less than eight percent of the described electors who shall sign such initiative petition before the same shall attain ballot status, we do not presume that the Legislature intended to enact a law where, by a random or spot check, less than eight percent would become permissible. It has no authority to so legislate. *Let's Help Florida v. Smathers*, 360 So.2d 494, 496 (Fla. 1st DCA 1978).

The Division of Elections, in an Opinion on Random Sampling dated January 23, 1978 (DE 78–7, Plaintiff's Exhibit 8), reached a similar conclusion, noting that the random sampling method permits some slight inaccuracies which cannot be tolerated in the constitutional initiative process.

■ Based on the testimony and exhibits presented at trial, and the arguments and stipulations of counsel, the Court concludes the following:

Section 99.097(4) is unconstitutional because it violates the equal protection clause of the Fourteenth Amendment. In *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), the Supreme Court invalidated Virginia's poll tax and held that "a state violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard." 383 U.S. at 666, 86 S.Ct. at 1081. Because the right to vote is fundamental, any classification restraining that right must be closely scrutinized. 383 U.S. at 670, 86 S.Ct. at 1083.

The *Harper* case, unlike this one, dealt with a wealth classification that directly impacted on a voter's exercise of the franchise. This case is more closely akin to the situation confronting the Supreme Court in *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), where the Court struck down a Texas law requiring candidates for local office to pay a filing fee as a precondition to having their names placed on the primary election ballot. The Court recognized the differences between *Harper* and *Bullock* but concluded that the same equal protection analysis was applicable to both:

> Because the Texas filing fee scheme has a real and appreciable impact on the exercise of the franchise, and because this impact is related to the resources of the voters supporting a particular candidate, we conclude, as in *Harper*, that the laws must be "closely scrutinized" and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster. 405 U.S. at 144, 92 S.Ct. at 856.

Section 99.097(4) unquestionably renders access to the ballot by petitioners seeking to amend the Florida constitution dependent upon the wealth of those petitioners and the voters who support them. The State therefore must sustain the burden of demonstrating that non-waiver of verification charges for petitioners is reasonably necessary, and this it has failed to do. Although the Court recognizes the strong and legitimate interest of the State in regulating the election process, the State has demonstrated no necessity for prohibiting the waiver of the ten cent charge when petitioners seek to place an issue on the ballot but allowing the same waiver in the case of a candidate for office.

The State cites *Libertarian Party v. Florida*, 710 F.2d 790 (11th Cir.1983), as dispositive of this issue. In *Libertarian Party* the Eleventh Circuit upheld Florida's

requirement that three percent of the state's registered voters sign a petition to have a slate of minority party candidates printed on the general election ballot. The Court made the following comment:

Florida's procedures are not impermissibly burdensome as to cost ... County election suervisors charge 10 cents per signature to cover the costs of verifying the petitions, but they may use random sampling techniques which reduce the number of signatures checked and therefore the cost. Although filing fees may be waived, there is no provision for waiver of the 10-cent charge for minority parties. Plaintiffs have cited no cases holding that states must provide free access to the ballot in all circumstances. That minor parties must incur some expenses in accumulating the necessary signatures to qualify for the ballot does not constitute an equal protection violation. 710 F.2d at 795 (citations omitted).

Complete reliance upon this language from *Libertarian Party* is unfounded, however, because of at least three critical differences between this case and *Libertarian Party*. First, the *Libertarian Party* plaintiffs did not challenge the signature verification requirement; second, as the Court noted, minority party candidates have available to them the random sampling method to reduce signature verification costs; and third, there was no evidence that compliance with section 99.097(4) placed an undue burden upon all resources available to the *Libertarian Party* plaintiffs.

The Court is troubled by the State's complete failure to justify the distinction section 99.097(4) draws between candidates and petitioners seeking to amend the constitution. Certainly denial of ballot access to a candidate has a profound effect on his supporters and their right to vote. Of even greater impact is the denial of ballot access to Floridians employing the initiative process, because such denial effectively strips from the hands of the voters a power expressly reserved to them by the Florida constitution. The lack of any alternative to payment of the signature verification charges forecloses access to the ballot for a large group of citizens and renders ineffective their advocacy of the issue they desire to put before the voters. Thus, section 99.097(4) also impermissibly infringes upon First Amendment guarantees.

The Supreme Court has required that states provide an alternative means of ballot access to indigent candidates unable to pay filing fees. *Lubin v. Panish*, 415 U.S. 709, 718, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1973). No less should be required for groups advocating constitutional changes. In a case such as this one, where the signature verification charge admittedly places an undue burden on petitioners' resources, the only reasonable alternative is for the State to bear the cost of signature verification. As the Supreme Court stated in *Bullock v. Carter*, 405 U.S. at 148, 92 S.Ct. at 858, "[v]iewing the myriad governmental functions supported from general revenues, it is difficult to single out any of a higher order than the conduct of elections at all levels to bring forth those persons desired by their fellow citizens to govern." If there is a governmental function "of a higher order," it may well be the conduct of an election that will bring before the voters a proposed amendment desired by the number of voters called for in the Florida constitution. For this reason, section 99.097(4), as applied to Clean-Up '84, can not stand.

### Conclusion

 Plaintiffs and all present and future people, groups or organizations who wish to solicit signatures on petitions at polling places in the State of Florida on election day will suffer irreparable injury unless Fla.Stat. § 104.36 is declared invalid. Even temporary deprivations of First Amendment rights cause irreparable harm. *Citizens for a Better Environment v. Park Ridge*, 567 F.2d 689, 691 (7th Cir. 1975). The State has not shown that entry of an injunction would cause any harm that can not be remedied by other lawful procedures that will not abridge any person's First Amendment rights.

Similarly, Plaintiff Clean-Up '84 and all present and future people, groups or organizations who wish to have signatures on petitions for placing an issue on the ballot verified by supervisors of election in the State of Florida, but who cannot pay the required statutory charges without imposing an undue burden upon their resources or any resources available to them, will suffer irreparable harm unless Fla.Stat. § 99.097(4) is declared invalid. The harm suffered by Plaintiffs far exceeds the possible additional administrative expenses to be borne by the State.

Therefore, because Fla.Stat. § 104.36 violates the First and Fourteenth Amendments to the United States Constitution, and because Fla.Stat. § 99.097(4) violates the equal protection clause of the Fourteenth Amendment to the United States Constitution, it is

ORDERED:

1. Defendant Heinrich and all Sheriffs in the State of Florida are enjoined from enforcing or attempting to enforce the provisions of Fla.Stat. § 104.36 prohibiting the solicitation or attempt to solicit a signature on any petition within one hundred yards from any polling place on the day of any election.

2. Defendant Krivanek and all Supervisors of Election in the State of Florida are enjoined from enforcing the provisions of Fla.Stat. § 99.097(4) requiring any person or organization submitting a petition to have an issue placed on the ballot to pay the sum of ten cents for each signature checked by Defendants or the actual cost of checking such signatures, whichever is less, provided that such person or organization certifies in writing its inability to pay such charges without imposing an undue burden on its resources or upon the resources otherwise available to it.

3. The Clerk is directed to forthwith send a copy of this Order by registered mail to every sheriff and supervisor of elections in the State of Florida.