The COMMITTEE FOR BETTER HEALTH CARE FOR ALL COLORADO CITIZENS, by Robert W. SCHRIER and Carl E. Bartecchi, Plaintiff–Appellant,

v.

Natalie MEYER as Secretary of State of the State of Colorado and Pat R. Stealey, Defendants–Appellees.

No. 90SA440.

Supreme Court of Colorado, En Banc.

April 20, 1992.

Rehearing Denied May 11, 1992.

Lee N. Sternal, P.C., Lee N. Sternal, Pueblo, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Denver, for defendant-appellee Natalie Meyer.

Hays & Wilson, James C. Wilson, Jr., Mark Bender, James H. Beimford, Denver, for defendant-appellee Pat R. Stealey.

Justice KIRSHBAUM delivered the Opinion of the Court.

The Committee for Better Health Care for all Colorado Citizens (the Committee), appellant, appeals the judgment of the District Court for the Second Judicial District of Colorado affirming a final administrative decision of appellee the Colorado Secretary of State (the Secretary) rejecting numerous petitions filed in support of a legislative initiative to increase the amounts of state and local taxes levied on sales of tobacco products.[1] The Secretary concluded, *inter alia*, that certain portions of sections 1–40–106, –107, and –109, 1B C.R.S. (1991 Supp.) (hereinafter the 1989 amendments),[2] and administrative policies

1. The district court reviewed the Secretary's decision pursuant to § 24–4–106, 10A C.R.S. (1988). Our appellate jurisdiction is based upon § 1–40–109(2)(a), 1B C.R.S. (1991 Supp.).

2. The 1989 amendments were contained in H.B. 1181, which bill became effective June 10, 1989. Ch. 42, secs. 1–17, 1989 Colo.Sess.Laws 319–29. In pertinent part, § 1–40–106, 1B C.R.S. (1991 Supp.), prescribes particular information that

must be provided by registered electors at the time they sign initiative petitions; prescribes particular information that petition circulators must provide on notarized circulator affidavits; and provides that certain warnings must be affixed to each page of every initiative petition section in a form prescribed by the Secretary. In pertinent part, § 1–40–107, 1B C.R.S. (1991 Supp.), provides that petition sections shall be printed on forms prescribed by the Secretary

developed by the Secretary pursuant thereto were applicable to this initiative process. On appeal, the Committee contends that the Secretary arbitrarily and capriciously applied certain portions of the 1989 amendments to this initiative process; that, if applicable, such legislation contravenes provisions of article V of the Colorado Constitution; and that the Secretary is prohibited by the doctrine of equitable estoppel from relying on such legislation. We affirm in part, reverse in part, and remand the case to the district court with directions to remand to the Secretary for further proceedings.

## I

On May 5, 1989, the Committee filed its proposed initiative with the legislative council and the office of legislative legal services for review and comment, pursuant to section 1–40–101(1), 1B C.R.S. (1991 Supp.). A conference was conducted on May 18, 1989, and the final version of the initiative was then filed with the Secretary pursuant to section 1–40–101(2), 1B C.R.S. (1991 Supp.). On June 7, 1989, the Initiative Title Setting Board met and established the title, submission clause and a summary, pursuant to section 1–40–101(2), 1B C.R.S. (1991 Supp.).

While those events transpired, the General Assembly considered and adopted several amendments to various portions of sections 1–40–101 to –119, 1B C.R.S. (1980), the statutory scheme regulating the initiative process. The 1989 amendments became effective on June 10, 1989. Shortly after that date Robert Schrier, a Committee representative, telephoned Colorado Elections Officer Donetta Davidson, a member of the Secretary's staff, to inquire about the applicability of the 1989 amendments to the proceedings concerning the initiative. Schrier inquired specifically whether the period within which to petition for review of the contents of the ballot title, submission clause and summary fixed by the Initiative Title Setting Board was the fifteen-day period established by one of the 1989 amendments rather than the thirty-day period provided by the prior parallel statutory provision. Davidson replied that in her opinion the thirty-day period would control that matter and advised Schrier to obtain legal advice regarding the applicability of the new legislation to other matters associated with the initiative.

On June 30, 1989, Davidson met with Schrier and another representative of the Committee; requested the Committee to designate two representatives, as required by one provision of the 1989 amendments; and gave them copies of the statutes governing the initiative process and of the 1989 amendments, a set of circulator instructions containing information based on the 1989 amendments, and a circulator affidavit form based on provisions of the 1989 amendments. In late July 1989, Schrier received an initiative instruction manual from the Secretary, which manual also contained the above-described documents.

In early August of 1989, after obtaining the Secretary's approval of a sample petition, the Committee began the process of collecting signatures in support of the initiative.[3] On December 7, 1989, the Committee filed 1,955 petitions containing approximately 73,600 signatures with the Secretary.

and circulated only as permitted by legislative direction, prohibits disassembly of petition sections if the effect of such separation is to separate affidavits from signatures, and prescribes the manner in which petitions are to be filed with the Secretary. In pertinent part, § 1–40–109, 1B C.R.S. (1991 Supp.), establishes evidentiary presumptions, time limits and procedures for administrative review of the sufficiency of such petitions by the Secretary, the filing and final administrative determination of protests directed to that initial review, and judicial review of such final agency decision.

**3.** The Colorado Constitution provides that:

The first power hereby reserved by the people is the initiative, and signatures by registered electors in an amount equal to at least five percent of the total number of votes cast for all candidates for the office of secretary of state at the previous general election shall be required to propose any measure by petition....

Colo. Const. art. V, § 1(2) (1991 Supp.). The parties agree that 50,688 valid signatures were necessary to satisfy the constitutional formula for proposals initiated in 1989.

After conducting a review of the petitions pursuant to the standards established by the 1989 amendments, the Secretary accepted 50,283 signatures. The Secretary rejected the remaining signatures, primarily on the following grounds: signatures by circulators and petition signers who were deemed not to be registered electors because they listed two residence addresses or because the residence addresses listed on the petitions differed from the residence addresses set forth on a master voting list maintained by the Secretary; circulator affidavits and petitions containing incomplete information; petitions to which were affixed circulator affidavits signed on dates different from the dates appearing on the corresponding notarization statements; and petitions containing extra staple holes.

On January 11, 1990, the Committee, in reliance on the curative provisions of section 1–40–109(2), 1B C.R.S. (1980),[4] filed petitions containing approximately 2,200 additional signatures in support of the initiative with the Secretary. On January 12, 1990, the Secretary rejected the additional signatures on the ground that the curative provisions of section 1–40–109(2) had been repealed by one of the 1989 amendments.

The Committee and appellee Pat R. Stealey filed protests to the Secretary's decision,[5] and the case was assigned to an administrative law judge (ALJ) for hearing, pursuant to section 24–4–105, 10A C.R.S. (1988). After conducting lengthy hearings, the ALJ issued an initial decision affirming in part and reversing in part the Secretary's rulings. The ALJ concluded that the 1989 amendments were applicable to activities relating to the initiative that took place after the title setting and that the Secretary was not barred by the doctrine of equitable estoppel from applying those amendments after their June 10, 1989, effective date. The ALJ basically affirmed the Secretary's rulings rejecting signatures, but overruled the Secretary's rejection of signatures on petitions containing additional staple holes.

The Committee and Stealey filed exceptions to the initial decision. The Secretary issued a final decision on May 31, 1990, affirming the ALJ's rulings except for the conclusion that signatures on petitions containing staple holes should have been allowed, which conclusion was reversed. The Committee sought judicial review of the Secretary's final decision, and the district court subsequently entered a judgment affirming that decision.

II

It is important to note the relatively limited scope of this appeal and the standards of review applicable thereto. It is axiomatic that in any appellate proceeding this court may consider only issues that have actually been determined by another court or agency and have been properly presented for our consideration. *Dempsey v. Romer*, 825 P.2d 44, 57 n. 13 (Colo.1992); *Ortho Pharmaceutical Corp. v. Heath*, 722 P.2d 410, 415 n. 3 (Colo.1986); *Colgan v. Department of Revenue, Div. of Motor Vehicles*, 623 P.2d 871, 874 (Colo.1981); *see Hy-vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512, 527 (Iowa 1990). Our standard of review is the standard applicable to initial district court review of agency action set forth in section 24–4–106, 10A C.R.S. (1988), which statute states in pertinent part as follows:

> If [the court] finds that the agency action is arbitrary or capricious, a denial of statutory right, contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, purposes, or limitations, not in accord with the procedures or procedural limitations of this article or as otherwise re-

---

**4.** That statute contained the following pertinent language:

> In case the petition is declared insufficient in form or number of signatures ... it may be withdrawn ... and, within fifteen days thereafter, may be amended or additional names signed thereto as in the first instance and refiled as an original petition....

§ 1–40–109(2), 1B C.R.S. (1980).

**5.** The Committee asserted that most of the signatures rejected by the Secretary were in fact valid. Stealey asserted that the Secretary improperly allowed approximately 10,000 signatures.

quired by law, an abuse or clearly unwarranted exercise of discretion, based upon findings of fact that are clearly erroneous on the whole record, unsupported by substantial evidence when the record is considered as a whole, or otherwise contrary to law, then the court shall hold unlawful and set aside the agency action and shall restrain the enforcement of the order or rule under review, compel any agency action to be taken which has been unlawfully withheld or unduly delayed, remand the case for further proceedings, and afford such other relief as may be appropriate....

§ 24–4–106(7), 10A C.R.S. (1988). Thus, this court may determine that agency action is arbitrary or capricious, violative of constitutional rights, or constitutes an abuse of discretion. However, the right to appeal a decision of a district court sitting as a reviewing court pursuant to section 24–10–106 is not a right of appeal de novo.

In its complaint for review filed in the district court, the Committee asserted that the Secretary arbitrarily and capriciously abused the authority of that office by (1) declaring that the existence of extra staple holes in certain petitions created a presumption requiring the rejection of the signatures contained in such petitions; (2) rejecting petitions on the basis that the circulators thereof were not registered electors; (3) rejecting signatures because circulators and petition signers had supplied more than one address as their declared places of residence; (4) disallowing signatures because circulators and petition signers failed to supply all of the detailed information respecting residence addresses required by the 1989 amendments; and (5) rejecting signatures because the dates of circulator signatures differed from the dates contained in the corresponding notarized attestations of those signatures. The Committee further asserted in its petition for review that the Secretary erroneously failed to apply the statutory provisions regulating the initiative process in effect prior to June 10, 1989, to this initiative process, including the provisions of section 1–40–109(2), 1B C.R.S. (1980), permitting the filing of curative petitions, and that the Secretary was barred by the doctrine of equitable estoppel from applying the provisions of the 1989 amendments.

The Committee's complaint also challenged the validity of the 1989 amendments on constitutional grounds. It alleged that the 1989 amendments violated article V of the Colorado Constitution by placing the burden of proof on proponents of initiative petitions and by requiring the secretary "to adversarily review all petition sections with great detail"; that the 1989 amendments violated article V of the Colorado Constitution by requiring adherence to "matters of form" that conflicted with the purposes of that constitutional article; and that the Committee was denied "meaningful due process of law" by provisions of the 1989 amendments establishing particular time periods for agency action and the lodging of protests thereto. Although the Committee's trial brief contained conclusionary statements to the effect that the 1989 amendments produced a chilling effect on its right to petition, the brief contained no citations of authority and no argument directly requiring interpretation of the First Amendment to the United States Constitution.

In its opening brief here, the Committee requests consideration of the following three issues:

I. Has the Secretary of State's enforcement of the 1989 Amendments ... against [the Committee] operated to place an improper and chilling burden upon the exercise of Rights protected by both federal and state constitutions or, in the alternative, are the 1989 Amendments unconstitutional upon their face?

II. Has the Secretary of State improperly determined that Appellant's Tobacco Tax Initiative Petition is subject to the [1989] amendments ... which became effective after the ballot title and submission clause had already been accepted?

III. Should the Secretary of State be equitably estopped from enforcing

the [1989] amendments ... against [the Committee]....

The brief also contains conclusionary statements to the effect that the 1989 amendments impermissibly chill the Committee's exercise of First Amendment rights to peaceably petition the government for redress of grievances,[6] but summarizes the Committee's position respecting constitutional issues as follows:

 I. THE 1989 AMENDMENTS ... CREATE AN UNCONSTITUTIONAL HINDRANCE TO THE EXERCISE OF THE CONSTITUTIONAL RIGHT OF THE PEOPLE TO INITIATE THEIR OWN LAWS....

 A. *The 1989 Statutory Amendments hinder rather than facilitate, the exercise of the Initiative.*

 B. *It is not necessary to have petition sections notarized to protect against fraud.*

 C. *The decision in Clark v. Aurora, is not d[is]positive....*

 This review of the issues articulated in the petition for review filed in the district court and in the Committee's brief filed here and in that court reveals that the constitutional questions to be resolved in this appeal are few in number and limited in scope. In its complaint for review filed with the district court the Committee's constitutional challenges to the 1989 amendments were based on article V of the Colorado Constitution and on "due process" concerns. However, the Committee's argument to the district court that the time constraints contained in the 1989 amendments violate "due process" protections

has not been asserted here. References in its trial and appellate briefs to First Amendment rights were stated in conclusionary form, were not accompanied by citations to any authority, and appeared solely in the context of arguments relating to rights afforded the Committee by article V of the Colorado Constitution.[7] In these circumstances, we conclude that questions concerning the applicability of federal First Amendment and due process standards are not properly presented by this appeal. *See BQP Indus., Inc. v. State Bd. of Equalization,* 694 P.2d 337, 342 (Colo.App.1984). In terms of constitutional challenges, then, this appeal requires us to determine only whether certain of the 1989 amendments on their face violate article V of the Colorado Constitution.

In its brief submitted on appeal the Committee also argues that the following acts of the Secretary constitute arbitrary and capricious conduct: (1) the determination that the 1989 amendments apply to the Committee's initiative efforts; (2) the adoption of an administrative process of rigorously examining all petitions for compliance with all requirements of the 1989 amendments; (3) the adoption of a presumption that petitions with extra staple holes have been disassembled and are therefore invalid; (4) the adoption of a policy or standard that disallows a petition because the date of signature appearing on the circulator affidavit differs from the date of signature appearing on the corresponding notarization statement; and (5) the adoption of a presumption that a circu-

---

**6.** In its reply brief the Committee states that this court "could well hold that the net effect of [the 1989 amendments] is to violate rights guaranteed by the First Amendment to the United States Constitution."

**7.** There is no federal constitutional right to the initiative process. *Kelly v. Macon–Bibb County Bd. of Elections,* 608 F.Supp. 1036, 1039 (D.Ga. 1985). However, the right to initiative adopted by a state is a fundamental right, to be tested by application of the standard of strict scrutiny. "The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change.... '[S]tatutes that limit the power of the people to initiate

legislation are to be closely scrutinized and narrowly construed....'" *Meyer v. Grant,* 486 U.S. 414, 421, 108 S.Ct. 1886, 1891, 100 L.Ed.2d 425 (1988) (quoting *Urevich v. Woodward,* 667 P.2d 760 (Colo.1983)); *Ficker v. Montgomery County Bd. of Elections,* 670 F.Supp. 618, 620 (D.Md. 1985); *Clean–Up '84 v. Heinrich,* 590 F.Supp. 928, 930 (M.D.Fla.1984), *aff'd,* 759 F.2d 1511 (11th Cir.1985); *see Henry v. Connolly,* 910 F.2d 1000, 1004 (1st Cir.1990). The Committee has not referred to strict scrutiny analysis in any of its briefs filed in any judicial review proceeding; accordingly, neither the Secretary nor Stealey has considered any First Amendment issues in their corresponding briefs.

lator or petition signer who lists multiple addresses or whose address as listed on a petition differs from that person's address as recorded on the Secretary's master voting list is not a registered elector. Our review of the propriety of the Secretary's conduct is limited to those issues.

### III

■ The Committee asserts that application of the 1989 amendments to its initiative efforts constitutes impermissible retroactive application of those statutory provisions. We disagree.

The Colorado Constitution provides that "[n]o ex post facto law, nor law ... retrospective in its operation ... shall be passed by the general assembly." Colo.Const. art. II, § 11. A statute is deemed to be violative of this constitutional prohibition if it " 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already [past].' " *Continental Title Co. v. District Court*, 645 P.2d 1310, 1314 (Colo.1982) (quoting *Moore v. Chalmers–Galloway Live–Stock Co.*, 90 Colo. 548, 554, 10 P.2d 950, 952 (1932)). However, application of a statute is not considered retroactive "merely because the facts upon which it operates occurred before adoption of the statute." *Continental Title Co.*, 645 P.2d at 1314.

In this case, the Secretary applied the 1989 amendments only to events in this initiative process that transpired after June 10, 1989. The Committee's transactions with respect to fixing the ballot title, submission clause and summary were not affected by the 1989 amendments. Application of the 1989 amendments to transactions that took place after June 10, 1989, did not result in the creation of new obligations, the imposition of new duties or the attachment of new disabilities with respect to transactions that occurred prior to that date. *Id.* Accordingly, in order to establish that application of the 1989 amendments to this initiative process constitutes impermissible retrospective application of those statutory provisions, the Committee

must demonstrate that such application abolished or impaired vested rights acquired under prior legislation. *See Himelgrin v. City and County of Denver*, 717 P.2d 1006, 1008 (Colo.App.1986).

■ The Committee argues that it had vested rights in the procedural and remedial measures available to it under the statutory scheme regulating the initiative process as it existed prior to June 10, 1989. Rights to the benefit of particular procedures or to invoke particular remedies do not constitute vested rights, however. *Jefferson County Dep't of Social Servs. v. D.A.G.*, 199 Colo. 315, 607 P.2d 1004 (1980); *Kardoley v. Colorado State Personnel Bd.*, 742 P.2d 934 (Colo.App.1987). The 1989 amendments accomplished several changes in the procedures associated with the initiative process, created new remedies for the benefit of proponents and protesters, and abolished certain procedures and remedies available under the prior legislative scheme. The Committee had no vested rights in procedures altered or abolished by the 1989 amendments, including the right to file additional signatures formerly permitted by section 1–40–109(2), 1B C.R.S. (1980).

### IV

■ The Committee argues that the Secretary should be barred by the doctrine of equitable estoppel from enforcing the 1989 amendments against its initiative efforts because of certain statements made by elections officer Donetta Davidson and because of certain conduct of the Secretary. We disagree.

■ The doctrine of equitable estoppel is premised upon principles of fair dealing and is designed to prevent manifest injustice. *Orsinger Outdoor Advertising, Inc. v. Department of Highways*, 752 P.2d 55, 67–68 (Colo.1988); *City and County of Denver v. Stackhouse*, 135 Colo. 289, 293–94, 310 P.2d 296, 298 (1957); *see Fanning v. Denver Urban Renewal Auth.*, 709 P.2d 22, 24 (Colo.App.1985). The following elements must be established to support a claim of equitable estoppel: the party to be

estopped must know the facts and either intend the conduct to be acted on or so act that the party asserting estoppel must be ignorant of the true facts, and the party asserting estoppel must rely on the other party's conduct with resultant injury. *Department of Health v. Donohue*, 690 P.2d 243, 247 (Colo.1984). The reliance of the party seeking to benefit from the doctrine of equitable estoppel must be reasonable. *Orsinger*, 752 P.2d at 67; *Fritz v. Regents of the Univ. of Colorado*, 196 Colo. 335, 340, 586 P.2d 23, 26 (1978). The doctrine may be asserted against governmental agencies. *National Advertising Co. v. Department of Highways*, 751 P.2d 632, 638–39 (Colo.1988); *Colorado Water Quality Control Comm'n v. Town of Frederick*, 641 P.2d 958, 964 (Colo.1982).

In this case, the ALJ found that Donetta Davidson, an employee of the Secretary, informed Robert Schrier, a Committee representative, that he should seek the opinion of legal counsel with regard to the applicability of the 1989 amendments to events in the initiative process taking place after June 10, 1989. The record of the administrative hearings fully supports this finding. In addition, the Secretary provided the Committee with a copy of sections 1–40–101 to –119, 1B C.R.S. (1991 Supp.), as reflected in the 1989 amendments; a set of circulator instructions based on those amendments; and other documents developed by the Secretary pursuant to the 1989 amendments. In these circumstances, it is clear that neither Donetta Davidson nor the Secretary intended for the Committee to act on any representations or conduct of that office with regard to the applicability of the 1989 amendments to this initiative process.

Donetta Davidson did inform Schrier that in her opinion questions relating to the fixing of the ballot title, submission clause and summary of the proposed initiative would not be governed by the 1989 amendments. Schrier testified at the administrative hearing that he assumed on the basis of that statement that the 1989 amend-

ments would not be applied to this initiative process. The Committee suggests that it justifiably relied on that assumption because the petition forms circulated by the Secretary "invited error" and because the circulators' instructions distributed by the Secretary failed to inform circulators that the provisions of the 1989 amendments would be applied to this initiative process.[8]

The petition forms developed by the Secretary and distributed to the Committee incorporated the requirements of detailed residence address information contained in the 1989 amendments. The notarization forms contained in those documents expressly reflected the requirement that the circulator was required to execute the circulator affidavit in the presence of the notary. The circulator instructions were also modeled on requirements established by the 1989 amendments. The fact that the petition forms and the information distributed to circulators contained no express reference to the 1989 amendments does not render the documents misleading. In view of Donetta Davidson's recommendation that the Committee obtain legal advice concerning the applicability of the 1989 amendments to any activities occurring after June 10, 1989, any reliance placed by the Committee on her statements or on the conduct of the Secretary for an assumption that the 1989 amendments were inapplicable to this initiative effort cannot be deemed reasonable.

## V

### A

The Colorado Constitution expressly reserves to the People of this state "the power to propose laws ... and to enact ... the same at the polls independent of the general assembly," directs that "[i]nitiative petitions for state legislation ... in such form as may be prescribed pursuant to law, shall be addressed to and filed with the [Secretary] at least three months before the general election at which they are to be voted upon" and provides that the Secre-

---

**8.** The Committee implies that the documents should also have contained language stating specifically that the curative provisions of § 1–40–109(2), 1B C.R.S. (1980), had been repealed.

tary "shall submit all measures initiated by ... the people for adoption or rejection at the polls, in compliance with this section." Colo. Const. art. V, § 1. These provisions reserving to the people the right to exercise the initiative process are self-executing, Colo. Const. art. V, § 1, and therefore must be liberally construed to effectuate their purposes. *Clark v. City of Aurora,* 782 P.2d 771, 777 (Colo.1989); *Margolis v. District Court,* 638 P.2d 297, 302 (Colo. 1981); *City of Glendale v. Buchanan,* 195 Colo. 267, 272, 578 P.2d 221, 224 (1978); *Common Cause v. Anderson,* 178 Colo. 1, 5, 495 P.2d 220, 221 (1972); *Yenter v. Baker,* 126 Colo. 232, 236, 248 P.2d 311, 314 (1952). In view of the importance of the constitutional right of initiative, we have recognized that legislation tending to restrict that right must be strictly construed. *Margolis,* 638 P.2d at 302; *Common Cause,* 178 Colo. at 5, 495 P.2d at 221–22; *Yenter,* 126 Colo. at 237, 248 P.2d at 314.

 The constitution further provides, however, that petitions circulated in the course of an initiative process shall be filed with the Secretary "in such form as may be prescribed pursuant to law." Colo. Const. art. V, § 1(2). The General Assembly is also constitutionally authorized to adopt legislation "to secure the purity of elections, and guard against abuses of the elective franchise." Colo. Const. art. VII, § 11. Thus legislation designed to prevent fraud, mistake or other abuses in the initiative process is firmly rooted in constitution-

al soil. *Clark,* 782 P.2d at 777; *Brownlow v. Wunsch,* 103 Colo. 120, 123, 83 P.2d 775, 777 (1938); *see In re Interrogatories H.B. 1078,* 189 Colo. 1, 8, 536 P.2d 308, 314 (1975). Measures adopted by the General Assembly to prevent abuse, mistake, or fraud in the initiative process may not unduly diminish the rights to that process, however. *Clark,* 782 P.2d at 777; *Billings v. Buchanan,* 192 Colo. 32, 35, 555 P.2d 176, 178 (1976); *In Re Interrogatories H.B. 1078,* 189 Colo. at 8, 536 P.2d at 314. Of course, a party asserting that legislation violates constitutional criteria assumes the burden of establishing such assertion beyond a reasonable doubt. *People v. Fuller,* 791 P.2d 702, 705 (Colo.1990); *People v. Czemerynski,* 786 P.2d 1100, 1110–11 (Colo.1990); *Firelock Inc. v. District Court,* 776 P.2d 1090, 1097 (Colo.1989). These principles guide our examination of the constitutional issues asserted by the Committee.

### B

Section 1–40–106(2)(b), as amended by the 1989 amendments, requires each circulator of a petition to sign, date and have notarized an affidavit containing information about the circulator's address and status as a registered elector.[9] Section 1–40–106(2)(a), as so amended, requires all persons who sign petitions to provide detailed information about their residence addresses.[10] The Committee argues that these

---

9. Section 1–40–106(2)(b) states in pertinent part as follows:

 To each petition section shall be attached a signed, notarized, and dated affidavit executed by the registered elector who circulated said petition section, which shall include his printed name, the address at which he resides, including the street name and number, the city or town, and the county, the date he signed the affidavit; that he was a registered elector at the time the section of the petition was circulated and signed by the listed electors; that he circulated the said section of the petition; that each signature thereon was affixed in his presence; that each signature thereon is the signature of the person whose name it purports to be; that to the best of his knowledge and belief each of the persons signing said petition section was, at the time of signing, a registered elector; and that he has not paid or will not in the future pay and

that he believes that no other person has so paid or will pay, directly or indirectly, any money or other thing of value to any signer for the purpose of inducing or causing such signer to affix his signature to such petition. The secretary of state shall not accept for filing any section of a petition which does not have attached thereto the notarized affidavit required by this section. Any signature added to a section of a petition after the said affidavit has been executed shall be invalid.

§ 1–40–106(2)(b), 1B C.R.S. (1991 Supp.).

10. Section 1–40–106(2)(a) states in pertinent part as follows:

 Each registered elector shall sign his own signature and shall print his name, the address at which he resides, including the street number and name, the city and town, the county, and the date of signing....

particularized statutory requirements impermissibly restrict the right to the initiative established by article V, section 1(2), of the Colorado Constitution.[11] We disagree.

The constitutional requirement that a circulator execute an "affidavit" is of course satisfied if the circulator obtains authentication of her or his signature from a notary public. An affidavit may also be authenticated by any person authorized to administer oaths, such as judges, magistrates, referees, court clerks and deputy court clerks. *See* § 24–12–103, 10A C.R.S. (1991 Supp.). The Committee implies that the notarization requirement of section 1–40–106(2)(b) impermissibly requires circulators to obtain signature authentications only from notaries public.

■■■■ Statutory terms are to be construed in a manner that avoids potential constitutional infirmities. *Renteria v. State Dep't of Personnel,* 811 P.2d 797, 799 (Colo.1991); *In re Petition of S.O.,* 795 P.2d 254, 258 (Colo.1990); *Parrish v. Lamm,* 758 P.2d 1356, 1364 (Colo.1988). A requirement of third-party authentication of circulator signatures is justified as a measure designed to protect the integrity of the initiative process insofar as it emphasizes the significance of the personal responsibility circulators must assume to prevent irregularities in the initiative process. The constitutional provision according prima facie validity only to verified petitions recognizes that fact. We can discern no heightened protection to the integrity of the initiative process by a legislative determination permitting authentication of circulator signatures only by registered notaries public. *See* § 12–55–119, 5B C.R.S. (1991). Such a legislative determination would, however, restrict the ability of cir-

culators to obtain official authentication of their signatures, and thus to some extent would impede the initiative process.

We find nothing in the language of section 1–40–106(2)(b) to suggest that the General Assembly intended to prohibit circulators from obtaining authentication of signatures affixed to circulator affidavits from persons duly authorized to administer oaths, contrary to procedures permitted by article V, section 1(6), of the Colorado Constitution. Rather, we construe the statutory references to notarization to be generic rather than technical in nature, requiring only that circulators' signatures be authenticated by persons authorized to administer oaths. Such construction fully implements the legislative intent to ensure that circulators, who possess various degrees of interest in a particular initiative, exercise special care to prevent mistake, fraud, or abuse in the process of obtaining thousands of signatures of only registered electors throughout the state. So construed, the statute does not alter the authentication process for verification of circulator affidavits established by the Colorado Constitution.

■■■■ The 1989 amendments require each circulator to identify the street name and number, city or town, and county comprising the circulator's residence; indicate the date upon which the affidavit was signed; and state, *inter alia,* that the circulator was a registered elector at the time the petition was circulated. § 1–40–106(2)(b), 1B C.R.S. (1991 Supp.). The amendments further provide that each person who signs a petition must print that person's name; indicate the address at which the person resides, including the street name and num-

§ 1–40–106(2)(a), 1B C.R.S. (1991 Supp.).

**11.** The constitutional provision states as follows: The petition shall consist of sheets having such general form printed or written at the top thereof as shall be designated or prescribed by the secretary of state; such petition shall be signed by registered electors in their own proper persons only, to which shall be attached the residence address of such person and the date of signing the same. To each of such petitions, which may consist of one or more sheets, shall be attached an affidavit of some registered elector that each signature thereon is the signature of the person whose name it purports to be and that, to the best of the knowledge and belief of the affiant, each of the persons signing said petition was, at the time of signing, a registered elector. Such petition so verified shall be prima facie evidence that the signatures thereon are genuine and true and that the persons signing the same are registered electors. Colo. Const. art. V, § 1(6).

ber, the city or town, and the county; and indicate the date upon which the person signed the petition. § 1–40–106(2)(a), 1B C.R.S. (1991 Supp.). The Committee argues that these requirements unduly restrict citizen participation in the initiative process.

This argument in essence challenges the degree of detailed information about residence addresses deemed by the General Assembly to be reasonably necessary to ensure that circulators and petition signers are in fact registered electors. While, as the Committee observes, the requirements for detailed information may increase the potential for scrivener error, any formal requirements introduce such potential. In view of the constitutional mandate that only registered electors may circulate or sign petitions, we do not find these particularized requirements unduly restrictive of the initiative process. We reached a similar conclusion in *Clark v. City of Aurora,* 782 P.2d 771, 779–81 (Colo.1989), in the context of requirements imposed by a municipal code on citizen referendum efforts.

### C

■ The Committee also argues that the 1989 amendments incorporated in subsections 1–40–109(1)(b)(I), (b)(II), and (c), 1B C.R.S. (1991 Supp.), contravene the provisions of article V, section 1(6), of the Colorado Constitution assuring that a properly verified petition "shall be prima facie evidence that the signatures thereon are genuine and true and that the persons signing the same are registered electors." [12] We do not agree.

Section 1–40–109(1)(b)(I), 1B C.R.S. (1991 Supp.), requires the Secretary to determine that all petition signers are registered voters, to consider the validity of all signatures in light of the requirements established by section 1–40–106, and to issue the results of such analysis within twenty-one

days after the petitions are filed. Section 1–40–109(1)(b)(II) requires the Secretary to file a public document specifying the number of sufficient and insufficient signatures, to identify all insufficient signatures, and to describe the grounds for any determination of insufficiency. Section 1–40–109(1)(c) authorizes any registered elector to file a protest of the Secretary's findings within thirty days of the issuance of the Secretary's statement.

Only properly verified petitions are subject to the presumption of prima facie validity established by article V, section 1(6), of the Colorado Constitution. That same constitutional provision authorizes the Secretary to designate the general form of all petitions and directs that petitions must be signed by registered electors. The Secretary's responsibility to determine that signatures of circulators and petition signers are in fact genuine signatures of registered voters, as well as the General Assembly's authority to direct the exercise of that responsibility, are based directly on these constitutional safeguards. *See Landrum v. Ramer,* 64 Colo. 82, 85–86, 172 P. 3, 4 (1918). *See also Adams v. Hill,* 780 P.2d 55, 56 (Colo.App.1989).[13]

The provisions of the 1989 amendments relating to the Secretary's examination of filed petitions simply require the Secretary to ascertain that the signatures of circulators and petition signers meet the formal requirements established by the General Assembly and by that office. The process ensures a speedy and thorough initial administrative analysis of submitted signatures, as required by the Colorado Constitution; a detailed exploration of all administrative decisions made with respect to the invalidity of particular signatures, for the benefit of proponents and potential opponents; an opportunity for both proponents and opponents to protest those administrative determinations; and judicial review of

---

**12.** *See supra* note 11.

**13.** The Committee at one point suggests that the provisions of § 1–40–109(2)(a), 1B C.R.S. (1991 Supp.), requiring the party protesting the Secretary's determination of sufficiency or insufficiency of signatures to assume the burden of

proof are invalid. To the extent the Committee suggests that this statutory provision violates art. V, § 1(6), of the Colorado Constitution, we disagree. It merely requires any party disagreeing with an initial administrative determination to justify that party's protest.

all final administrative rulings. Contrary to the assertions of the Committee, this legislative scheme does not simply benefit potential opponents of proposed initiatives. It assures all parties to an initiative process that the process complies with constitutional and statutory provisions designed both to facilitate citizen participation therein and to ensure that the process is neither abused nor subverted by inadvertence or by design. In our view, this scheme furthers rather than frustrates the provisions of article V, section 1(6), of the Colorado Constitution.

## VI

■ The Committee finally contends that certain conduct of the Secretary in the administration of the 1989 amendments was arbitrary and capricious. Administrative conduct that reflects a conscientious effort to reasonably apply legislative standards to particular administrative proceedings is neither arbitrary nor capricious. *Colorado–Ute Elec. Ass'n, Inc. v. Public Utils. Comm'n,* 760 P.2d 627 (Colo.1988); *Kaiser v. Wright,* 629 P.2d 581 (Colo.1981); *Bennett v. Price,* 167 Colo. 168, 446 P.2d 419 (1968). However, in evaluating the Secretary's administration of legislation regulating the constitutionally protected right to the initiative process, we have also recognized that mere mechanical application of legislative or administrative standards might unduly impair that right. *Clark v. City of Aurora,* 782 P.2d 771, 781 (Colo.1989).

■ The Committee alleges that the Secretary's determination to apply the 1989 amendments to this proceeding and to scrutinize petitions and signatures contained therein for compliance with the statutory requirements of those amendments constitutes arbitrary and capricious conduct. We have determined that application of the 1989 amendments to this initiative process did not constitute retroactive application of such legislation and that the portions of those amendments requiring the Secretary to thoroughly examine all petitions and signatures submitted in the course of an initiative process do not violate state constitutional provisions safeguarding the initiative process. In view of those conclusions, the Secretary's application of and adherence to the standards contained in the 1989 amendments was both reasonable and· necessary.

■ The Committee asserts that the Secretary's adoption of a presumption that petitions with extra staple holes are invalid constitutes arbitrary and capricious conduct. We agree with this assertion.

Section 1–40–107(2), 1B C.R.S. (1991 Supp.), states as follows: "Any disassembly of a section of the petition which has the effect of separating the affidavits from the signatures shall render that section of the petition invalid and of no force and effect." Thus a petition that has been disassembled must be disqualified. *Elkins v. Milliken,* 80 Colo. 135, 138–39, 249 P. 655, 657 (1928); *see Billings v. Buchanan,* 192 Colo. 32, 555 P.2d 176 (1976).

In this case, the Secretary rejected five petitions because petition sections contained extra staple holes. Each petition section contained a blue paper backing folded over the top thereof to form a border, and each section was stapled twice at the top through the border. The rejected petitions contained sections exhibiting additional staple holes near the staples that were in place.

The Secretary argues that it is necessary to presume that petitions containing extra staple holes have been disassembled in order to minimize the risk of improper circulator conduct. While we agree that improper circulator conduct should be discouraged by administrative policies, those policies must be reasonable and may not unduly restrict the right to the initiative process. *Clark v. City of Aurora,* 782 P.2d at 777.

While the presence of extra staple holes may constitute circumstantial evidence of disassembly, the elevation of such circumstantial evidence to the status of an evidentiary presumption is in our view unreasonable. There are too many potential explanations for the presence of such holes, including the possibility that they were made at the time the blue backs were affixed to

the petition sections, to permit the logical leap from the premise of staple holes to the conclusion of disassembly. Additional evidence of disassembly, such as the presence of pages exhibiting tears or other irregularities, might justify the establishment of a presumption of misconduct.

The ALJ found that, absent the presumption established by the Secretary, the evidence in the record did not support a conclusion that the five petitions in question had been disassembled. We agree with that determination, and therefore conclude that the Secretary's decision to reject those petitions on the ground that they had been disassembled constituted arbitrary and capricious conduct.[14]

The Committee argues that the Secretary's decision to prescribe a notarization form requiring personal authentication of circulator affidavits and the Secretary's enforcement of an administrative policy requiring rejection of a petition if the date upon which the circulator signed the affida-

vit differs from the date upon which the circulator's affidavit is authenticated constitutes arbitrary and capricious conduct. In the particular circumstances of this case, we agree in part.

We have concluded that the statutory requirement that circulator affidavits be "notarized" in the generic sense—that is, executed under oath before a person authorized to authenticate signatures—is appropriately designed to protect against mistake, fraud or abuse in the initiative process and does not unduly restrict the right of citizens to participate in that process. In this case, the Secretary adopted a form for notarization reflecting the language contained in statutory provisions requiring subscribers to personally affirm their signatures before notaries public. See § 12–55–119, 5B C.R.S. 1991).[15] The Secretary has constitutional authority to prescribe the general form of initiative petitions. Colo. Const. art. V, § 1(6). In

---

**14.** The ALJ noted that the Secretary had not determined whether the circulators or signers of those five petitions were registered electors or whether other signature requirements had been satisfied. On remand, the Secretary should ex- amine the petitions in light of all applicable statutory standards.

**15.** The prescribed circulator affidavit form states as follows:

AFFIDAVIT OF CIRCULATOR

I, [Circulator Printed Name] swear that I am a registered elector of the State of Colorado; that my address is:

Street Number and Name

| City | County | Zip Code |
|------|--------|----------|

and I have circulated the foregoing petition and each signature thereon was affixed in my presence; and each signature thereon is the signature of the person whose name it purports to be, and to the best of my knowledge and belief each of the persons signing said petition section was at the time of such signing a registered elector of the State of Colorado; I have not nor will I pay in the future and I believe that no other person has so paid or will pay, directly or indirectly, any money or other thing of value to any signer for the purpose of inducing or causing such signer to affix his signature to such petition.

| Signature of Circulator | Date of Signing |
|-------------------------|-----------------|

STATE OF COLORADO
COUNTY OF _____

Subscribed and sworn to before me this _____ day of _____, 1989.

_____
(Notary Public)

My commission expires _____
(SEAL)

addition, the general notarization requirement of section 1–40–106(2)(b) refers to the Secretary's authority to prescribe forms. The requirement of personal authentication under oath, whether before a judge, court clerk or notary public, is reasonably calculated to emphasize the importance of the requirement that circulators personally observe petition signers execute petitions. We conclude that the Secretary's decision to prescribe a circulator affidavit form requiring personal signature affirmation by a circulator in the presence of an authorized oath taker is neither arbitrary nor capricious and does not unduly restrict the initiative process.

The affirmation form appearing on circulator affidavits requires that the document be subscribed and sworn to personally by the circulator in the presence of a notary public on a date certain. Correspondence of the dates on a circulator affidavit and on the prescribed affirmation form provides a strong basis for the conclusion that a signature purporting to be that of a circulator is in fact that circulator's signature and that the circulator in fact witnessed the petitioners' execution of the corresponding petition. *See Farm Bur. Fin. Co., Inc. v. Carney*, 100 Idaho 745, 750, 605 P.2d 509, 514 (1980). Conversely, a discrepancy in those two dates establishes that the circulator did not sign the circulator affidavit in the presence of the notary, thus presenting an irregularity in the initiative process. Such irregularity would in most circumstances amply justify initial administrative rejection of the petition in question. The availability of a procedural mechanism permitting proponents to introduce evidence to establish the validity of such signatures is sufficient to assure that the right to the initiative is not unduly burdened by such administrative policy. *See* § 1–40–109(1)(c), 1B C.R.S. (1991 Supp.).

We also note that the requirement of verified circulator affidavits established by article V, section 1(6), of the Colorado Constitution is furthered by the Secretary's determination that circulator affidavits be personally affirmed before authorized oath-takers. The central feature of an affidavit is its assurance, pursuant to oath, that the contents of a subscribed document are, to the subscriber's personal knowledge or belief, true. *Otani v. District Court*, 662 P.2d 1088, 1090 (Colo.1983). The circulator affidavit form developed by the Secretary preserves this feature.

■ While the Secretary's selection of a circulator affidavit form requiring personal affirmation of circulator signatures and adoption of an administrative policy authorizing initial rejection of affidavits revealing discrepancies between the dates of circulator execution and the dates of official authentication are reasonable, particular difficulties peculiar to this, the first initiative effort subject to the 1989 amendments, must be considered in responding to the Committee's argument. For example, the circulator affidavit form adopted by the Secretary limited the class of authorized oath takers to notaries public. The instructions for use promulgated and distributed by the Secretary contained similar limitations. While forms and instructions may be amended, the documents available to the Committee in this initiative process were overly restrictive.

In addition, the single-page circulator instruction sheet developed by the Secretary is somewhat ambiguous in its directions respecting the execution of circulator affidavits and authentication forms.[16] The instruction sheet provides that the circulator "should" appear personally before a notary public, "shall" then fill in the affidavit in the presence of the notary, and should "[t]ake care that this is done only after all signatures have been collected." The direction to take circulator affidavits to a notary only after signatures have been collected is followed by a statement that the notary public will "then" execute the affidavit. The instructions also warn that "faulty or incomplete" signature lines will not be counted and that if an affidavit is "not completed properly, the entire petition is void."

**16.** The circulator instructions contained in the more inclusive instruction manual promulgated by the Secretary are far more precise in this respect.

The instructions do not, however, indicate in any manner that the date of notarization must correspond to the date the affidavit is signed or that discrepancies in the two dates will automatically result in the rejection of the affidavit and corresponding petition. Furthermore, the combination of the requirement that an affidavit be taken to a notary only after all signatures have been obtained with the statement that the notary will "then" authenticate the affidavit suggests that authentication might occur at a later date.

In view of these circumstances, we conclude that in one additional area the Secretary's application of the administrative policies adopted pursuant to the 1989 amendments was unduly mechanical and overly restrictive. One set of circulator affidavits executed by appellant Carl E. Bartecchi contained discrepancies in the dates of signatures set forth on the affidavit and appearing on the notarization form.[17] At the administrative hearing, Bartecchi testified that he did witness the petitioner subscriptions appearing on the petitions, that he personally knew the notary public, and that he personally executed the notarization forms. While acknowledging that Bartecchi's testimony constituted evidence in explanation of the discrepancies in the dates, the administrative law judge concluded that the notarization was invalid and affirmed the Secretary's rejection of the petitions associated with the affidavits.

This mechanistic application of administrative policies is in our view unduly restrictive in the circumstances of this case. The constitutional requirement of verified affidavits, the legislative requirement of generic notarization of circulator signatures, and the administrative policy of initially declaring invalid circulator affidavits revealing date discrepancies such as those presented by Bartecchi's affidavits are justifiable as reasonable steps to assure that circulators personally witnessed the execution of petitions by petitioner signers. In view of the deficiencies of the Secretary's circulator instructions, Bartecchi's testimony constituted sufficient evidence in this case to overcome any initial administrative determination rejecting those circulator affidavits. In the absence of other evidence suggesting that Bartecchi's affidavits were invalid, the rejection of those affidavits and the petitions to which they were attached was arbitrary and capricious and unduly restricted this particular initiative process.

■ The Committee finally asserts that the Secretary's administrative determination that a circulator who lists multiple addresses on an affidavit or a petition signer whose address as listed on a petition differs from the address recorded on the master voting list maintained by the Secretary will not be deemed a registered elector is arbitrary and capricious.[18] We disagree.

It is undisputed that circulators and petition signers must be registered electors. A registered elector is one who is qualified to vote and who has actually registered to vote. § 1–2–201, 1B C.R.S. (1980). A registered elector may have only one legal place of residence. § 1–2–203, 1B C.R.S. (1980). A registered elector who moves from one county or precinct to another with the intent to make a permanent change in residence is considered to have abandoned his residence in the county or precinct in which the elector formerly resided. § 1–2–102(1)(e), 1B C.R.S. (1980).

Subsections 1–40–106(2)(a) and (b), 1B C.R.S. (1991 Supp.), require petition signers and circulators to indicate their residence addresses on petitions and circulator affidavits. The petition form and the instructions for the use thereof prepared by the Secretary clearly indicate that petition signers must list their residence addresses, and the instruction manual for initiative efforts

---

**17.** Bartecchi testified that sixteen or seventeen petitions were disallowed by the Secretary and that they constituted a small percentage of the total number of petitions he submitted. The protest lodged by Stealey contains challenges to eighteen petitions circulated by Bartecchi.

**18.** Section 1–40–109(1)(b)(I) states in pertinent part as follows:
A person shall be deemed a registered elector if his name and address appear on the master voting list kept by the [Secretary] at the time of signing the section of the petition.
§ 1–40–109(1)(b)(I), 1B C.R.S. (1991 Supp.).

prepared by the Secretary expressly informs circulators that they must list their residence addresses on circulator affidavits.[19] Section 1–40–109(1)(b)(I), 1B C.R.S. (1991 Supp.), provides that a person will be deemed to be a registered elector if the person's name and address appears on the master voting list maintained by the Secretary at the time of the signing of the petition. If a petition signer lists a present address that differs from the address appearing on the master voting list, it is reasonable to conclude that the signatory has abandoned the latter address and therefore is no longer a registered elector. If a circulator lists two addresses on a circulator affidavit, such information does not establish the single residence address requisite for purposes of registered elector status. The administrative standard developed by the Secretary is reasonable in view of the important particularized statutory requirements upon which it is based. *See Clark v. City of Aurora*, 782 P.2d 771, 782 (Colo.1989). In view of the statutory provisions authorizing circulators and petition signers whose signatures have been rejected to establish that they are in fact registered electors, such administrative standard does not impermissibly restrict the right of access to the initiative process. *See* § 1–40–109(1)(c), 1B C.R.S. (1991 Supp.).

### VII

For the foregoing reasons, we reverse the judgment of the district court insofar as it affirms the Secretary's decisions to reject five petitions because of unexplained staple holes and to reject petitions circulated by Bartecchi that contain discrepancies between the dates the circulator affidavits were signed and the dates contained in the corresponding notarization forms. With respect to those petitions, the case is remanded to the district court with directions to return the matter to the Secretary for further proceedings consistent with this

**19.** However, neither the affidavit form nor a one-page circulator instruction sheet prepared by the Secretary contains a clear statement that

opinion. In all other respects, the judgment of the district court is affirmed.

ERICKSON, J., concurs in part and dissents in part.

MULLARKEY, J., concurs in part and dissents in part.

ROVIRA, C.J., and VOLLACK, J., do not participate.

Justice ERICKSON concurring in part and dissenting in part:

I respectfully concur in part and dissent in part. I would affirm the district court.

The appellant, Committee for Better Health Care for all Colorado Citizens (Committee), filed an action in the District Court, City and County of Denver (district court), appealing a final decision of the Secretary of State (Secretary). In the decision, the Secretary rejected petitions submitted for the Tobacco Products Tax Initiative (Initiative), pursuant to section 1–40–101(1), 1B C.R.S. (1980 & 1991 Supp.). The district court reviewed the case pursuant to section 24–4–106, 10A C.R.S. (1988 & 1991 Supp.), which permits judicial review of final agency action. The district court, after reviewing the record, affirmed the Secretary's decision and this appeal followed pursuant to section 1–40–109(2)(a), 1B C.R.S. (1980 & 1991 Supp.), which authorizes a direct appeal to this court.

A reviewing court may reverse an administrative determination only if the court finds that the agency exceeded its constitutional or statutory authority, made an erroneous interpretation of law, acted in an arbitrary and capricious manner, or made a determination that is unsupported by the evidence in the record. *See* § 24–4–106(7), 10A C.R.S. (1988 & 1991 Supp.). The district court's examination of the record found none of the statutory grounds for reversal. It is the function of the Secretary and the administrative law judge, not the reviewing court, to weigh the evidence and determine the credibility of witnesses.

a circulator must list his or her residence address on circulator affidavits.

*See Board of Assessment Appeals v. Arlberg,* 762 P.2d 146, 151 (Colo.1988).

The constitution, as well as the statute governing the initiative and referendum process, provide a critical role for the Secretary of State. Section 1–40–109(1)(b)(I) provides, in part, that:

"Upon submission of the petition, the secretary of state shall examine each name signature on the petition.... The secretary shall assure that the information required by section 1–40–106 is complete, that the information on each signature line was written by the person making the signature, that no signatures have been added to any sections of the petition after the affidavit required by section 1–40–106(2)(b) has been executed, and that such person is a registered elector."

§ 1–40–109(1)(b)(I), 1B C.R.S. (1991 Supp.). Similarly, the Colorado Constitution requires the Secretary to prepare the petition forms and to place on the ballot all measures that meet the requirements of article V, section 1(6), of the Colorado Constitution. Colo. Const. art. V, § 1(6) & (7).

In *Clark v. City of Aurora,* 782 P.2d 771 (Colo.1989), we addressed a municipal ordinance granting the right to referendum that had requirements similar to the controlling statute in this case. We held that "the Colorado Constitution charges the General Assembly with the responsibility to pass laws to secure the purity of elections and guard against the abuses of the elective franchise." *Id.* at 777. Also in *Clark,* we held that the requirements of the statute governing the initiative and referendum process were consistent with that constitutional charge. *Id.*

The Secretary's enforcement and interpretation of the statute in the instant case is consistent with the powers granted under the statute and the Colorado Constitution. Absent a finding that the Secretary's decision was arbitrary and capricious or that the Secretary acted in violation of the constitution, the statute, or our case law, the ruling of the Secretary should be affirmed.

Justice MULLARKEY concurring in part and dissenting in part:

The majority gives a broad construction to the notarization requirement which the legislature imposed on initiative petitions by the 1989 statutory amendments, and, as so construed, upholds it. In addition, the majority also affirms the lower court's order which approved the Secretary of State's (Secretary's) rejection of several petitions on the grounds that the circulators did not sign the petition affidavits on the same day they were notarized. Because I believe the Secretary's rejection of the petitions was erroneous, I respectfully dissent from that part of the majority opinion.

The Committee for Better Health for all Colorado Citizens (Committee), a volunteer organization, filed the Tobacco Products Tax Initiative with the Secretary of State for placement on the November 1990 ballot. Approximately 73,600 signatures were originally submitted to the Secretary of State. Upon rejection by the Secretary of approximately 23,300 signatures, the petition fell 385 signatures short of the required 50,688 to qualify for the ballot. In light of the Secretary's arbitrary and capricious rejection of many of those 23,300 signatures, this court should reverse the lower court and order the initiative to be placed on the ballot.[1]

The 1989 statutory amendments added the requirement in subsection (2)(b) of section 1–40–106, 1B C.R.S. (1991 Supp.), that the petition circulator's affidavit be notarized and dated. The majority recognizes that, under the constitution, the circulator's affidavit may be taken by anyone who is authorized by law to administer an oath. Thus, judges and other court personnel described in section 24–12–103, 10A C.R.S. (1991 Supp.), as well as notaries public, may administer the circulator's oath. Maj. op. at 894. Accordingly, the majority construes the reference to a "notarized" affi-

---

1. The Committee's complaint and opening brief, submitted to the district court, stated that over 4000 signatures were rejected on the grounds that the circulator affidavit dates differed from the date of notarization. This amount was not disputed in either of the defense briefs.

davit in section 1–40–106(2)(b) to be "generic" and not intended to require that only a notary public authenticate a circulator's affidavit.

I agree that the constitution prohibits limiting the affidavit function to performance by a notary public. Since its enactment, article V, section 1 has been amended only once. In 1980, the voters changed the initiative process primarily to require that only a "registered elector" rather than a "qualified elector" may sign a petition. *Compare Colo. Const.* art. V, § 1, 1A C.R.S. (1980) *with Colo. Const.* art. V, § 1, 1A C.R.S. (1991 Supp.). Significantly, for purposes of this case, however, the affidavit required of petition circulators was not changed by the 1980 constitutional amendment. The provision at issue provides in relevant part:

> The petition shall consist of sheets having such general form printed or written at the top thereof as shall be designated or prescribed by the secretary of state; such petition shall be signed by registered electors in their own proper persons only, to which shall be attached the residence address of such person and the date of signing the same. To each of such petitions, which may consist of one or more sheets, shall be attached an affidavit of some registered elector that each signature thereon is the signature of the person whose name it purports to be and that, to the best of the knowledge and belief of the affiant, each of the persons signing said petition was, at the time of signing, a registered elector. Such petition so verified shall be prima facie evidence that the signatures thereon are genuine and true and that the persons signing the same are registered electors.

*Colo. Const.* art. V, § 1(6). Also unchanged from the original 1910 amendment, the initiative amendment continues to provide that the rights of initiative and referendum are "in all respects self-executing." *Colo. Const.* art. V, § 1(10).

We have recognized that this constitutional provision "is not a mere framework, but contains the necessary detailed provisions for carrying into immediate effect the enjoyment of the rights therein established without legislative action." *Yenter v. Baker,* 126 Colo. 232, 236, 248 P.2d 311, 314 (1952). The simple affidavit requirement is one of the detailed provisions in the initiative amendment which was intended to be sufficient for carrying the petition into immediate effect. From the time it was approved in 1910, this constitutional amendment has required that the affidavit of an elector be attached to the petition to verify the signatures contained within the petition. Ch. 3, Sec. 2, 1910 Colo.Ex.Sess.Laws 13. At all times, the amendment also has provided that a petition "so verified" is prima facie evidence that the attached signatures thereon are genuine and true.

"[W]ords used in the Constitution are to be given the natural and popular meaning usually understood by the people who adopted them." *Urbish v. Lamm,* 761 P.2d 756, 760 (Colo.1988) (citing *A–B Cattle Co. v. U.S.,* 196 Colo. 539, 589 P.2d 57 (1978)). The term "affidavit," by itself, does not require notarization by a notary public. "An affidavit is an oath reduced to writing and attested by him who has authority to administer the same...." *Walker v. People,* 22 Colo. 415, 418, 45 P. 388, 389 (1896). Thus, *any* authorized officer, not necessarily a notary public, may authenticate the affidavit under the constitutional provision. Affidavits taken in this manner have long served the purpose of protecting exercise of the initiative right against fraud, mistake and abuse.

Notary laws were in existence at the time that the initiative provision was added to the constitution. *See* Ch. 96, § 4667, R.S. (1908). If the supporters of the initiative had considered authentication by a notary public necessary to guard against fraud, mistake, or abuse, the requirement that affidavits be notarized could have been put in place at that time. Instead, the provision required only an affidavit, and stated that a petition "so verified" was to be considered prima facie evidence that the signatures were genuine. In light of this fact, I agree that the statutory notarization requirement must be interpreted to require

nothing more than an affidavit authenticated by any person who is authorized by law to administer oaths and affirmations.

However, the Secretary has not interpreted the notarization requirement as a "generic" affidavit requirement. The Secretary has adopted a form for the circulator's affidavit which states:

## AFFIDAVIT OF CIRCULATOR

I, _____, swear that
(Circulator Printed Name)
I am a registered elector of the State of Colorado; that my address is:

_____
Street Number and Name

_____ _____ _____
City County Zip Code

and I have circulated the foregoing petition and each signature thereon was affixed in my presence; and each signature thereon is the signature of the person whose name it purports to be, and to the best of my knowledge and belief each of the persons signing said petition section was at the time of such signing a registered elector of the State of Colorado; I have not nor will I pay in the future and I believe that no other person has so paid or will pay, directly or indirectly, any money or other thing of value to any signer for the purpose of inducing or causing such signer to affix his signature to such petition.

_____ _____
Signature of Circulator Date of Signing

STATE OF COLORADO
COUNTY OF _____

Subscribed and sworn to before me this _____ day of _____, 1989.

_____
(Notary Public)

My commission expires _____
(SEAL)

----

Sections 1–40–106 and –107, 1B C.R.S. (1991 Supp.), require a circulator to use the Secretary's form and under section 1–40–107(2), 1B C.R.S. (1991 Supp.), the petitions would be invalid if the circulator substituted his own form of affidavit. In light of our holding in this case, the Secretary's form is inaccurate and misleading because if refers only to a notary public as authenticating the affidavit. Clearly it must be changed in the future.

Further, I question whether the Secretary properly invalidated a number of petitions because the date on which the circulator signed was not the same as the date on which the notary public signed. In my view, the Secretary erred and acted arbitrarily and capriciously when she invalidated such petitions.

The only reference to a date requirement for the circulator affidavit is found in section 1–40–106(2)(b), 1B C.R.S. (1991 Supp.), which states that "[t]o each petition section shall be attached a signed, notarized and dated affidavit executed by" the circulator. The Secretary apparently has interpreted the dated affidavit requirement to mean that both the circulator and the officer administering the oath must separately date the affidavit. Her adoption of a dual dating requirement is not compelled by the language of the statute and, as this case indicates, it plainly creates a trap for the unwary.

As the majority correctly reminds us, initiative is a fundamental right, maj. op. at 890, n. 7, and implementing laws must be liberally construed to promote the exercise of the initiative, maj. op. at 893. Consist-

ent with these principles, I would interpret the dated affidavit requirement to mean only that the officer administering the oath must date the affidavit. On that basis, I would reverse the Secretary's disapproval of any petitions because of a discrepancy in the dates shown by the circulator and the person who administered the affidavit.

Even if the circulator can be required to separately date the affidavit, a date discrepancy is not a valid basis for rejecting the petitions. The constitution in article V, section 1(6) requires the circulator to submit an affidavit indicating that the persons signing the petition were the persons named and that, to the best of the circulator's knowledge, those persons were registered electors at the time of signing. Here, the circulator has sworn that such facts are true by signing the statement required by the Secretary. Such a signed statement would expose the circulator to charges of perjury if the signed statement were materially false. *See* §§ 18–8–501 and –503, 8B C.R.S. (1986). For purposes of perjury, the definition of a written statement made under oath includes a statement made with the intent that it be accepted in compliance with a law which requires a statement attesting to the truth of the statement. § 18–8–501(2)(a)(III). Thus, the purpose of the constitutional affidavit requirement has been accomplished. "The chief test of the sufficiency of an affidavit required by law is whether it is so clear and certain that an indictment for perjury may be sustained on it if false." *Jotter v. Marvin*, 67 Colo. 548, 551, 189 P. 19, 20 (1920). The fact that the notary public executed the affidavit form at a later date is not a defect sufficient to invalidate the petitions because, after he has signed the oath, the circulator may acknowledge his signature to the officer administering the oath.

We confronted a similar problem in *Otani v. District Court*, 662 P.2d 1088 (Colo. 1983), where the question was whether an affidavit of indigency was sufficient to permit a criminal defendant to proceed *in forma pauperis* on appeal. The defendant signed a written statement in which he swore that he was indigent. He then ap-

peared before a notary public and acknowledged his signature to the notary. *Id.* at 1089–90, n. 2. The district court held that the document was not a valid affidavit of indigency but was a mere acknowledgement. We rejected that distinction and said:

> This conclusion misperceives the nature of the two writings. An affidavit is a signed, written statement, made under oath before an authorized officer, in which the affiant vouches that what is said is true. *Re Estate of Giannopoulos*, 89 Misc.2d 961, 392 N.Y.S.2d 828 (1977); 2A C.J.S. *Affidavits* § 2 (1972). An acknowledgement is a manner of authenticating an affidavit or other instrument by showing that it was the uncoerced act of the person executing it. 3 Am.Jur.2d *Affidavits* § 3 (1962). [The defendant's] statement was an affidavit; the use of the language "duly sworn upon oath" signified that [the defendant] declared under oath the truth of the facts set forth.... Therefore, we believe that the affidavit and acknowledgement, read together, constitute *prima facie* evidence that the facts in [the defendant's] affidavit were true.

*Id.* at 1090. The same reasoning should apply here. The circulator has sworn to the truth of the facts required by the constitution and his signature has been acknowledged by a notary public. Nothing more should be required.

Accordingly, I dissent from that portion of the majority opinion upholding the Secretary's invalidation of petitions because of date variances on the circulator's affidavit.