2013 CO 67

PAWNEE WELL USERS, INC.; The Harmony Ditch Company; City of Boulder; Centennial Water and Sanitation District; Natural Soda, Inc.; Purgatoire River Water Conservancy District; City of Sterling; William S. Vance, Jr.; Elizabeth S. Vance; James G. Fitzgerald; Mary Theresa Fitzgerald; San Juan Citizen's Alliance; Oil and Gas Accountability Project; Vista Pacifica, LLC; Dale Bell; Simon Land & Cattle Co.; James Benesch; Diane Benesch; Mike Meschke; LLH Operations, LLLP; Sheryl Cantalano; and Earthworks Oil and Gas Accountability, Plaintiffs–Appellees

and

David C. Black; Lallie Lee Black; Margaret Kral; Bruce Baizel; Lucy Baizel; Jim Jefferson; Big Stick Ditch Company; Colonel Alfred Wagstaff & Associates, LLC; and Huntington Ranches, LLC, Plaintiffs–Appellees–Intervenors

v.

Dick WOLFE, in his capacity as State Engineer, Defendant–Appellant
and
Southern Ute Indian Tribe, Defendant–Appellant–Intervenor

and

BP America Production Company; XTO Energy Inc.; ConocoPhillips Company; Chevron U.S.A., Inc. and its Affiliates Chevron Midcontinent, L.P. and Four Star Oil & Gas Company; Samson Resources Company; Energen Resources Corporation; Colorado Oil and Gas Association; and Colorado Petroleum Association, Defendants–Appellants–Intervenors

and

El Paso E & P Company, L.P.; Anadarko Petroleum Corporation; EOG Resources, Inc.; K.P. Kauffman Company, Inc.; Petroleum Development Corporation; EnCana Oil & Gas (USA) Inc.; Noble Energy, Inc.; Diamond Operating, Inc.; Gunnison Energy Corporation; and Pioneer Natural Resources USA, Inc., Defendants–Appellees–Intervenors.

Supreme Court Case No. 12SA13

Supreme Court of Colorado.

November 25, 2013

White & Jankowski, LLP, Sarah A. Klahn, Alan E. Curtis, Denver, Colorado, Attorneys for Plaintiffs–Appellees William S. Vance, Jr., Elizabeth S. Vance, James G. Fitzgerald, Mary Theresa Fitzgerald, San Juan Citizen's Alliance, and the Oil and Gas Accountability Project.

John W. Suthers, Attorney General, John Cyran, First Assistant Attorney General, Nathan Rand, Assistant Attorney General, Denver, Colorado, Attorneys for Defendant–Appellant Dick Wolfe, State Engineer.

McElroy, Meyer, Walker & Condon, P.C., Scott B. McElroy, M. Catherine Condon, Boulder, Colorado, Maynes, Bradford, Shipps & Sheftel, LLP, Adam T. Reeves, Durango, Colorado, Attorneys for Defendant–Appellant–Intervenor Southern Ute Indian Tribe.

Davis, Graham & Stubbs LLP, Zach C. Miller, Gail L. Wurtzler, Benjamin H. Kass, Denver, Colorado, Attorneys for Defendant–Appellant–Intervenor BP America Production Company.

Holland & Hart LLP, Christopher L. Thorne, William H. Caile, Denver, Colorado, Attorneys for Defendants–Appellants–Intervenors XTO Energy Inc. and ConocoPhillips Company.

Poulson Odell & Peterson LLC, Scott M. Campbell, Nick A. Swartzendruber, Denver, Colorado, Attorneys for Defendants–Appellants–Intervenors Chevron U.S.A., Inc. and its Affiliates, Chevron Midcontinent, L.P., and Four Star Oil & Gas Company.

Beatty & Wozniak, P.C., Kenneth A. Wonstolen, Karen L. Spaulding, Benjamin H. Kass, Denver, Colorado, Attorneys for Defendants–Appellants–Intervenors Samson Resources Company, Energen Resources Corporation, and Colorado Oil and Gas Association.

John Paul Seman, Jr., Denver, Colorado, Attorney for Defendant–Appellant–Intervenor Colorado Petroleum Association.

No appearance on behalf of: Pawnee Well Users, Inc.; The Harmony Ditch Company; City of Boulder; Centennial Water and Sanitation District; Natural Soda, Inc.; Purgatoire River Water Conservancy District; City of Sterling; Vista Pacifica, LLC; Dale Bell; Simon Land & Cattle Co.; James Benesch; Diane Benesch; Mike Meschke; LLH Operations, LLLP; Sheryl Cantalano; Earthworks Oil and Gas Accountability; David C. Black; Lallie Lee Black; Margaret Kral; Bruce Baizel; Lucy Baizel; Jim Jefferson; Big Stick Ditch Company; Colonel Alfred Wagstaff & Associates, LLC; Huntington Ranches, LLC; El Paso E & P Company, L.P.; Anadarko Petroleum Corporation; EOG Resources, Inc.; K.P. Kauffman Company, Inc.; Petroleum Development Corporation; EnCana Oil & Gas (USA) Inc.; Noble Energy, Inc.; Diamond Operating, Inc.; Gunnison Energy Corporation; and Pioneer Natural Resources USA, Inc.

JUSTICE EID delivered the Opinion of the Court.

¶ 1 This is a direct appeal from a final judgment issued in District Court, Water Division 1, which voided a rule promulgated by the Office of the State Engineer ("State Engineer") regarding nontributary ground water extracted in the course of coalbed methane ("CBM") production and other oil and gas development in Colorado.

¶ 2 Historically, the State Engineer did not require permits for ground water extracted in the course of CBM production, taking the position that such operations were governed exclusively by the Colorado Oil and Gas Conservation Commission ("COGCC"). This Court rejected the State Engineer's position in *Vance v. Wolfe*, 205 P.3d 1165, 1172–73 (Colo.2009), holding that the water extracted during the course of CBM production was not only subject to COGCC regulation, but also to the Water Right Determination and Administration Act of 1969, §§ 37–92–101 to –602, C.R.S. (2013), and the Colorado Ground Water Management Act, §§ 37–90–101 to –143, C.R.S. (2013) ("Ground Water Act"). Our holding required the State Engineer to potentially issue permits for more than 40,000 existing wells.

¶ 3 In recognition of the enormity of the task facing the State Engineer, the General Assembly stepped in and enacted House Bill 09–1303, 67th Gen. Assemb., 1st Reg. Sess. (Colo. 2009) ("H.B. 1303") (codified at §§ 37–90–137, 37–90–138(2), and 37–92–308(11), C.R.S. (2009)). H.B. 1303 granted the State Engineer authority under section 37–90–137(7)(c) of the Ground Water Act to "adopt rules to assist with the administration of this subsection (7)," which pertains to "case[s] of dewatering of geologic formations by withdrawing nontributary ground water to facilitate or permit mining of minerals." § 37–90–137(7). After conducting rulemaking proceedings, the State Engineer promulgated the final Produced Nontributary Ground Water Rules ("Final Rules"), which include "basin-specific rules" that delineate water contained within geologic formations across Colorado as nontributary for purposes of administering ground water wells used in oil and gas production. One basin-specific rule, known

as the Fruitland Rule, addresses a geologic formation known as the Fruitland Formation, which extends into the Southern Ute Indian Reservation ("Reservation"). The Final Rules also include the Tribal Rule, which states: "These Rules and regulations shall not be construed to establish the jurisdiction of either the State of Colorado or the Southern Ute Indian Tribe over nontributary ground water within the boundaries of the Southern Ute Indian Reservation as recognized in Pub.L. No. 98–290, § 3, 98 Stat. 201 (1984)."

¶ 4 The Final Rules were challenged by owners of vested water rights and citizen groups whose members own vested water rights (collectively, "Plaintiffs"). The State Engineer, the Southern Ute Indian Tribe ("Tribe"), and various oil and gas industry intervenors (collectively, "Intervenors")[1] opposed Plaintiffs' challenge. After extensive briefing by the parties, the water court upheld the Final Rules in their entirety except for the Fruitland Rule, which it invalidated. The water court held that although H.B. 1303 granted authority to the State Engineer to promulgate the Fruitland Rule, the Tribal Rule essentially divested the State Engineer of that authority. Given that the State Engineer's authority to promulgate the Fruitland Rule had not been established, the water court reasoned, the rule was invalid. The water court also found that the State Engineer had issued an improper "advisory" rule, and thus could not promulgate the Fruitland Rule unless he first obtained a judicial determination of his authority over nontributary ground water underlying the Reservation.

¶ 5 The State Engineer, the Tribe, and several Intervenors now appeal. We reverse and conclude that the water court erred in invalidating the Fruitland Rule based on the Tribal Rule. By passing H.B. 1303, the General Assembly authorized the State Engineer to promulgate the Final Rules to delineate nontributary ground water extracted in oil and gas production throughout the state, which would include nontributary ground water within Reservation boundaries. The Tribal Rule does not divest the State Engineer of this authority, nor can it. The Tribal Rule states on its face that the Final Rules themselves do not form the basis of or "establish" the State Engineer's authority to administer the nontributary ground water within Reservation boundaries. In other words, the Tribal Rule recognizes the well-accepted proposition that the State Engineer cannot establish his own authority; that is left to the General Assembly. Because the Tribal Rule did not divest the State Engineer of his authority, the water court erred in invalidating the Fruitland Rule on that ground. It follows that the water court also erred in labeling the Fruitland Rule an "advisory" rule and in requiring the State Engineer to obtain a judicial determination that he had authority to administer nontributary ground water within the boundaries of the Reservation.

¶ 6 Accordingly, we reverse the water court's invalidation of the Fruitland Rule and remand for further proceedings consistent with this opinion.

## I.

¶ 7 Historically, the State Engineer did not issue permits for ground water extracted in the course of coalbed methane ("CBM") production and other oil and gas operations based on a belief that such extraction was not a "beneficial use." In *Vance v. Wolfe*, 205 P.3d 1165 (Colo.2009), however, we held that extraction of water to facilitate CBM production did constitute a beneficial use under the Water Right Determination and Administration Act of 1969, §§ 37–92–101 to –602, C.R.S. (2008) ("1969 Act"), and the Colorado Ground Water Management Act, §§ 37–90–101 to –143, C.R.S. (2008) ("Ground Water

---

**1.** Intervenors who are party to this appeal are the following: the Southern Ute Indian Tribe; BP America Production Company; XTO Energy Inc.; ConocoPhillips Company; Chevron U.S.A., Inc. and its Affiliates Chevron Midcontinent, L.P. and Four Star Oil & Gas Company; Samson Resources Company; Energen Resources Corporation; Colorado Oil and Gas Association; and Colorado Petroleum Association, El Paso E & P Company, L.P.; Anadarko Petroleum Corporation; EOG Resources, Inc.; K.P. Kauffman Company, Inc.; Petroleum Development Corporation; EnCana Oil & Gas (U.S.A.) Inc.; Noble Energy, Inc.; Diamond Operating, Inc.; Gunnison Energy Corporation; and Pioneer Natural Resources USA, Inc.

Act"), and therefore was subject to those acts in addition to regulation by the Colorado Oil and Gas Conservation Commission ("COGCC"). *Id.* at 1169–70. As a result of our holding in *Vance,* the State Engineer was required to evaluate and potentially administer and issue permits for more than 40,000 wells statewide that withdraw ground water in the course of oil and gas operations. Pursuant to then-existing statute, the State Engineer would have been required to complete this task within sixty days after issuance of our decision in *Vance. See* § 37–90–138(2), C.R.S. (2008).

¶ 8 The General Assembly stepped in and enacted House Bill 09–1303, 67th Gen. Assemb., 1st Reg. Sess. (Colo. 2009) ("H.B. 1303") (codified at §§ 37–90–137, 37–90–138(2), and 37–92–308(11), C.R.S. (2009)). H.B. 1303 grants the State Engineer authority under section 37–90–137(7)(c) of the Ground Water Act to "adopt rules to assist with the administration of this subsection (7)," which pertains to "case[s] of dewatering of geologic formations by withdrawing nontributary ground water to facilitate or permit mining of minerals." § 37–90–137(7). H.B. 1303 also provides an extended time period for the State Engineer to complete administration and permitting.

¶ 9 The State Engineer conducted rulemaking proceedings pursuant to section 37–90–137(7)(c) and the State Administrative Procedure Act ("APA"), §§ 24–4–101 to –108, C.R.S. (2009). After a series of public meetings, the State Engineer filed a notice of proposed rulemaking in the Colorado Register. These proposed rules included the State Engineer's intent to delineate certain areas and formations in the state as nontributary for the purposes of section 37–90–137(7).[2] The notice of rulemaking also allowed interested parties to apply for party status and submit proposed alternate rules. A number of alternate rules were proposed, including a rule proposed by the Tribe and other oil and

gas operators identifying ground water in the Fruitland Formation, a geologic formation in southwest Colorado, as nontributary. This proposed rule, which ultimately became the Fruitland Rule, included areas both within and outside the Reservation.

¶ 10 Proposing a rule that included areas within and outside the Reservation created a potential thicket of jurisdictional issues that ultimately led to the inclusion of the Tribal Rule. The Tribe filed a motion to revise and clarify the Fruitland Rule. In its motion, the Tribe addressed the potential conflict between state and tribal jurisdiction if the State Engineer delineated nontributary ground water in the part of the Fruitland Formation that extends into the Reservation, noting that "the administration of the … Tribe's … nontributary ground water rights involves a host of unsettled issues in this rulemaking that are inappropriate to address in this forum. Indeed, pursuant to federal law, those issues cannot be resolved here." The Tribe, it explained, was not "seeking an exemption from a determination regarding the delineation of the nontributary/tributary boundary within the Reservation, but rather object[ed] to a determination in this rulemaking regarding jurisdiction over and administration of nontributary ground water within the Reservation."

¶ 11 As a result, the Tribe proposed the Tribal Rule, which states: "These Rules and regulations shall not be construed to establish the jurisdiction of either the State of Colorado or the Southern Ute Indian Tribe over nontributary ground water within the boundaries of the Southern Ute Indian Reservation as recognized in Pub.L. No. 98–290, § 3, 98 Stat. 201 (1984)." The State Engineer agreed to include the Tribal Rule in the rules but maintained throughout the rest of the rulemaking process and the subsequent proceedings that his office had jurisdiction over nontributary ground water within the boundaries of the Reservation.

---

**2.** Nontributary ground water is ground water outside of designated basins that "will not, within one hundred years of continuous withdrawal, deplete the flow of a natural stream … at an annual rate greater than one-tenth of one percent of the annual rate of withdrawal." § 37–90–103(10.5), C.R.S. (2013). Nontributary ground

water is treated as functionally disconnected from the surface water and designated ground water basins, and it is therefore not administered within Colorado's prior appropriation system. § 37–92–305(11), C.R.S. (2013); *see also Vance,* 205 P.3d at 1171.

¶ 12 In December 2009, the State Engineer filed the final Produced Nontributary Ground Water Rules ("Final Rules") with the Secretary of State. 2 COLO. CODE REGS. § 402–17. The Final Rules, according to the Statement of Basis, Purpose, and Specific Statutory Authority, were designed to "assist the State Engineer in efficiently and expeditiously identifying those oil and gas wells that withdraw nontributary ground water." The Final Rules created two new processes. First, they created a formal process to review individual nontributary determinations for purposes of administrating produced nontributary ground water outside of the well permitting process. Second, they created a means to delineate areas in the state as containing nontributary ground water. This ability to delineate was a narrow exception, "for the limited purpose of these Rules," to the legal presumption that ground water is tributary. *See Vance*, 205 P.3d at 1171. The Fruitland Formation was one of the areas delineated as containing nontributary ground water, as the State Engineer found "clear and convincing evidence" that produced ground water in the Northern San Juan Basin, in the Fruitland Formation, was nontributary. The Fruitland Rule became part of the Final Rules.

¶ 13 The State Engineer immediately put the Final Rules into effect. According to the affidavit the State Engineer submitted to the water court, by the time Plaintiffs brought their suit, the State Engineer had already made nontributary determinations for wells in the Fruitland Formation, including 1,261 wells within the Reservation and 26 outside of the Reservation. These included permit issuances to both the Tribe and to non-Tribe members.

¶ 14 After the State Engineer promulgated the Final Rules, Plaintiffs filed complaints in six water divisions. In their complaints, which the Multidistrict Litigation Panel consolidated into a single proceeding in Water Division 1, Plaintiffs disputed the validity of the Ground Water Rules in their entirety on their face. The State Engineer, the Tribe, and Intervenors opposed Plaintiffs' complaint.

¶ 15 The water court upheld the Final Rules except for the Fruitland Rule, which it invalidated. The court found that the Tribal Rule divested the State Engineer of authority to promulgate the Fruitland Rule, that the State Engineer was not authorized to issue an "advisory" rule regarding his authority over nontributary ground water within Reservation boundaries, and that in order to promulgate the Fruitland Rule, the State Engineer was required first to obtain a judicial determination of his authority. This direct appeal followed,[3] and we now reverse.

## II.

■ ¶ 16 We hold that the water court erred in invalidating the Fruitland Rule based on the Tribal Rule. It follows that the water court also erred in labeling the Fruitland Rule an "advisory" rule, and in requiring the State Engineer to obtain a judicial determination that he had authority to delineate nontributary ground water within the boundaries of the Reservation.

¶ 17 H.B. 1303 grants the State Engineer authority under section 37–90–137(7)(c) of the Ground Water Act to "adopt rules to assist with the administration of this subsection (7)," which pertains to "case[s] of dewatering of geologic formations by withdrawing nontributary ground water to facilitate or permit mining of minerals." § 37–90–137(7). There is no dispute that H.B. 1303 authorizes the State Engineer to promulgate the Fruitland Rule. Indeed, on its face, the legislation applies to all areas of the state, and contains no exception for tribal or other lands within the state. The heart of the Plaintiffs' challenge is that the Tribal Rule divests State Engineer of that authority. We disagree.

---

**3.** We have direct appellate jurisdiction pursuant to Colo. Const. art. VI, § 2(2); § 13–4–102(1)(d), C.R.S. (2013); and C.A.R. 1(a)(2). *See Water Rights of Park Cnty. Sportsmen's Ranch LLP v. Bargas*, 986 P.2d 262, 265 n. 2 (Colo.1999). We also have jurisdiction to review a district court's review of final agency action pursuant to the Colorado Administrative Procedure Act, § 24–4–106, C.R.S. (2013). *See also McClellan v. Meyer*, 900 P.2d 24, 29 (Colo.1995); *Comm. for Better Health Care for All Colorado Citizens by Schrier v. Meyer*, 830 P.2d 884, 888–89 (Colo.1992).

¶ 18 The Tribal Rule states that "[t]hese Rules and regulations shall not be construed to establish the jurisdiction of either the State of Colorado or the Southern Ute Indian Tribe over nontributary ground water within the boundaries of the Southern Ute Indian Reservation." The water court, agreeing with Plaintiffs, interpreted the Tribal Rule as recognizing that the State Engineer's jurisdiction over nontributary ground water within the Reservation had not been established. *See* Order at 22 (concluding that, because the Tribal Rule does not establish such jurisdiction, "the State engineer promulgated a rule in an area where his jurisdiction was not established"). In other words, the water court determined that the Tribal Rule somehow divested the State Engineer of the jurisdiction which H.B. 1303 provided.

¶ 19 The Tribal Rule does not, and indeed cannot, divest the State Engineer of his authority as established in H.B. 1303. The Tribal Rule explicitly states that the Final Rules do not "establish" the State Engineer's jurisdiction. But simply because the Final Rules do not establish the State Engineer's jurisdiction does not mean—as the water court believed—that jurisdiction was not established elsewhere. In this case, H.B. 1303 established jurisdiction. Moreover, the State Engineer cannot establish or disestablish his own jurisdiction. As we have held, state agencies are creatures of statute and have "only those powers expressly conferred by the legislature." *Hawes v. Colo. Div. of Ins.*, 65 P.3d 1008, 1016 (Colo.2003); *see also Maurer v. Young Life*, 779 P.2d 1317, 1337 (Colo.1989) (Mullarkey, J., concurring in part and dissenting in part) ("Administrative agencies are creatures of statute and have such powers and duties as the legislature gives them.") (citations omitted). The State Engineer possesses the authority granted to him by H.B. 1303—no more and no less. Indeed, the State Engineer maintained throughout the rulemaking process and these proceedings that H.B. 1303 granted him jurisdiction to delineate nontributary ground water in the Fruitland Formation through the Fruitland Rule. We therefore conclude

that the water court erred in invalidating the Fruitland Rule based on the Tribal Rule.

¶ 20 It follows that the remainder of the water court's order regarding the Fruitland Rule must be set aside. First, the water court labeled the Fruitland Rule "advisory" based on its belief that the rule was issued without authority under the Tribal Rule. But the Fruitland Rule was not "advisory" in the sense used by the water court, because it was issued pursuant to the authority H.B. 1303 granted—authority which the Tribal Rule could not divest. Second, the water court held that, because the Fruitland Rule was invalid, the State Engineer was required to obtain a judicial determination that he possessed the authority to promulgate the rule if he decided to do so in the future. Because we reject Plaintiffs' challenge to, and the water court's invalidation of, the rule based on an erroneous interpretation of the Tribal Rule, there is no need for a further judicial determination that the State Engineer may proceed in implementing the rule.

¶ 21 We likewise reject Plaintiffs' argument that, because the Tribal Rule divests the State Engineer of his authority over nontributary ground water within the Reservation, it is possible that the State Engineer may fail to administer nontributary ground water on the Reservation, even though he has delineated the Fruitland Formation as nontributary. Like the water court's "advisory" rule and judicial determination requirement, this argument fails because it is based on an erroneous reading of the Tribal Rule. H.B. 1303 vests the State Engineer with the authority "to adopt rules"—like the Fruitland Rule—"to assist with the administration" of nontributary ground water produced in the course of oil and gas production. There is no merit to Plaintiffs' claim that the State Engineer disavowed his authority over the administration of nontributary ground water underlying the Fruitland Formation by promulgating the Tribal Rule, while simultaneously promulgating the Fruitland Rule to assist him in that administration.[4]

---

4. Plaintiffs raised a facial challenge in this case, which required them to demonstrate that the Fruitland Rule was invalid in all of its possible applications. *See Scherer v. U.S. Forest Service*, 653 F.3d 1241, 1243 (10th Cir.2011). Plaintiffs' only attempt to meet this standard was to argue

## III.

¶ 22 Accordingly, we hold that the water court erred in invalidating the Fruitland Rule. We therefore reverse and remand for further proceedings consistent with this opinion.

that the Tribal Rule invalidated the Fruitland Rule, an argument we reject. There is nothing in our opinion today, however, that would preclude an as-applied challenge, either by Plaintiffs or the Tribe, to the State Engineer's authority regarding a particular application of the Fruitland Rule.